Opinion by
Judge Kramer,
■This is an appeal by Della Mae Rudolph (Rudolph) from an order of the Workmen’s Compensation Appeal Board (Board), dated October 10, 1974, which affirmed a referee’s decision holding that Rudolph’s claim for workmen’s compensation is barred by the statute of limitations.
The petment facts in this case, as found by the referee, are as follows:
*629 “1. On 6-30-70, Della Mae Rudolph, claimant, was employed by the Department of Public Welfare, Embreeville State Hospital, defendant.
* * $ $
“3. On 6-30-70, claimant herein suffered a work connected accident and injury while engaged in the course of her normal work activities. Although claimant presented herself to the infirmary of defendant-employer on said date and filed an accident report, claimant did not become disabled nor did she terminate her work.
“4. Although claimant apparently lost a day here and a day there — no specific days of lost work appear from the evidence — claimant was not totally disabled from working until July of 1971, on which latter date she was hospitalized and disabled for a period of three and a half weeks. Thereafter, claimant returned to work.
“5. Defendant-employer was advised of claimant’s accident and injury by accident report filed on 6-30-70.
“6. Claimant discussed her injury with a Mr. Passanante, personnel officer of defendant-employer, and Mr. Herman J. White of the Personnel Department of defendant-employer, as well as with a Mr. Kagle, an insurance adjuster for the carrier herein involved, at various times from 6-30-70 to sometime later in 1971. At no time was claimant misled or given misleading information as a result of the aforesaid conversations.
“7. Claimant filed her petition seeking compensation on 3-13-72 after a discussion with one of her creditors — the latter totally extraneous to this claim.
“8. On 6-30-70, State Workmen’s Insurance Fund was the insurance carrier for the defendant.” (Emphasis added.)
*630 Based upon these facts the referee and the Board concluded that Rudolph’s claim was barred by the statute of limitations.[1]
In her appeal to this Court Rudolph contends that there is sufficient evidence in the record to show that her employer (Hospital) unintentionally lulled her into a false sense of security concerning her claim. See Tarnoski v. Kanarr Corporation, 12 Pa. Commonwealth Ct. 488, 317 A.2d 904 (1974).
In a case s-uch as this, where the decision of the fact finder was adverse to the party with the burden of proof, our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed or competent evidence was capriciously disregarded. See Cole Steel Equipment Corporation v. Workmen’s Compensation Appeal Board, 14 Pa. Commonwealth Ct. 454, 322 A.2d 743 (1974).
Our careful review of the record in this case forces us to conclude that Rudolph was, in fact, unintentionally lulled into a false sense of security by the procedure used in the Hospital’s personnel office, and that the referee capriciously disregarded competent evidence when he found that Rudolph had not been misled. Testimony was received in this case from Rudolph and from two members of the Hospital’s personnel office. The record is a bit confusing because everyone who testified referred to representatives of the State Workmen’s Insurance Fund (the Hospital’s insurance carrier, hereinafter SWIF), as “workmen’s compensation” people. It is clear that the individuals in the Hospital’s personnel department understood that the entity they referred to as “workmen’s *631 compensation” was actually SWIF, but it is equally clear that Rudolph, whom the record reveals to be relatively unsophisticated, had no comprehension of what SWIF was, or that it was separate from that branch of government responsible for workmen’s compensation. We believe that the use of the misnomer “workmen’s compensation” for SWIF by the Hospital’s personnel department was inherently misleading in and of itself.
The two witnesses from the Hospital’s personnel office testified concerning the Hospital’s normal procedure in relation to workmen’s compensation claims. The Hospital requires reports to be filed on all work-related accidents, and these reports are sent by the personnel office to the entity they referred to as “workmen’s compensation” (in actuality SWIF). The personnel office would also send to SWIF copies of bills for medical services due to the accidents and reports indicating any time lost due to the accidents. The witnesses from the Hospital’s personnel office testified that, normally, the submission of either medical bills or a report of time lost to “workmen’s compensation” (SWIF) would cause a prompt investigation by a “workmen’s compensation” (SWIF) representative. Following these investigations SWIF would contact the accident victims by letter and inform them whether or not their claims had been denied. This letter was apparently a form letter which in the event of a denial informed the accident victims that they had a right to file a petition for workmen’s compensation if they believed the denial was unfair. Uncontroverted testimony in the record indicates that the Hospital’s employes “relied” upon prompt investigations by “workmen’s compensation” (SWIF) representatives.
The record indicates that Rudolph, prior to the claim petition involved in this case, had filed at least one previous claim petition. Rudolph testified that on that occasion a “workmen’s compensation” representative (apparently after an investigation) filed her claim for her. In *632 the instant case Rudolph followed the Hospital’s normal procedures. She filed an accident report, and a year later when she had to be hospitalized, she submitted her hospital bills to the personnel office. The report and the bills were forwarded to “workmen’s compensation” (SWIF) but an investigator did not appear until after the statute of limitations had run.[2] After her bills were submitted, Rudolph was apparently puzzled by the lack of a prompt investigation by “workmen’s compensation.” Before the statute of limitations ran, she contacted the personnel department several times concerning her bills and was told by individuals in the personnel office that “workmen’s compensation” would be contacted concerning her case. This assurance apparently led Rudolph to believe that her case was being processed by “workmen’s compensation” in the usual manner, and that the burden was now upon “workmen’s compensation” to investigate her case, just as it had investigated her previous case.
The record in this case indicates that at the time Rudolph’s medical bills were submitted to SWIF, a change in personnel caused a deviation from the normal procedure of a prompt investigation. Even the Hospital’s personnel department could not understand the lack of response from SWIF concerning Rudolph’s case. The following colloquy took place when one of the personnel witnesses was cross-examined:
“A. Ordinarily, if I may interject, sir, if an employee comes with that letter [the form letter sent after an investigation] from State Workmen’s Insurance Fund and the employee asks me do you know anything about this petition [the claim petition mentioned in the form letter], quite naturally I would try to fill it out for them. But again, unless I see that *633 letter, it wouldn’t prompt me to take any action at all. In Mrs. Rudolph’s case, that’s what I couldn’t quite understand why she hadn’t gotten a letter saying they denied the claim or some type of action. And I don’t have a copy of any letter saying this, that they denied the claim, because I felt that once the accident report was sent in and then the hospital bill would prompt some type of action, because it was sent in under workmen’s compensation, and ordinarily this would cause some kind of reaction, you know, where I would get a phone call or the adjuster would come out and talk to the employee about the accident.
“Q. You submitted a copy of the hospital bill to State Fund ?
“A. Yes, sir, we did. We also kept a copy for our file, but ordinarily this causes action, you know, and we encourage the employees if they have any bills connected with the injury to turn them into our office and we forward them right to workmen’s compensation [SWIF].
“Q. And .to your knowledge, you never received any letter from State Fund in reference to this claim ?
“A. Not that I can recall. I went through the folder just to make sure because it has been such a length of time. I want to be fair with Mrs. Rudolph, and I just don’t have anything in the file, and ordinarily we would get a carbon copy of the letter, and the bottom paragraph would say something about the petition, if they feel the denial was unfair or what have you, then they have the right to file the petition, but I have not seen a letter.” (Emphasis added.)
In summary, restricting our holding to the very unusual facts of this case, we conclude that the assurance by the Hospital’s personnel department to Rudolph that “workmen’s compensation” would be contacted concerning her claim, together with the normal procedure used by the Hospital and SWIF for workmen’s compensation *634 claims, unintentionally misled Rudolph, lulled her into a false sense of security, and caused her to believe that her case was being processed in the usual and proper fashion. The referee capriciously disregarded competent evidence in the record when he found that Rudolph was not misled and, therefore, we must reverse. In accordance with the above we therefore
Order
And Now this 12th day of June, 1975, the order of the Workmen’s Compensation Appeal Board, dated October 10, 1974, holding that the claim petition filed by Della Mae Rudolph was barred by the statute of limitations, is hereby reversed, and this entire matter is remanded to the Board for proper disposition.

. The statute of limitations applicable in this case is 16 months. See Act of February 28, 1956, P.L. (1955) 1120, §1. Subsequent to Rudolph’s accident the statute of limitations has been amended to provide for a two-year period. See Pennsylvania Workmen’s Compensation Act (Act), Act of June 2, 1915, P.L. 736, §315, as amended, 77 P.S. §602 (Supp. 1974-1975).

. Although the referee found that Rudolph talked to a SWIF representative in 1971, the record shows that Rudolph did not talk with the representative until after her claim was filed on March 13, 1972.